# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| KRISA LEMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 6:16-cv-01874-JHE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

Plaintiff Krisa Lemons ("Lemons") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Doc. 1). Lemons timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I. Factual and Procedural History

Lemons filed her application for a period of disability, DIB, and SSI on March 19, 2015, alleging she became unable to work beginning October 27, 2015. (Tr. 170-71, 177-80). The Agency initially denied Lemons' application, (tr. 81-125), and Lemons requested a hearing where she appeared on July 15, 2015. (Tr. 39-80). After the hearing, the Administrative Law Judge

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 9).

("ALJ") denied Lemons' claim on April 29, 2016. (Tr. 17-38). Lemons sought review by the Appeals Council, but it declined her request on September 22, 2016. (Tr. 1-7). On that date, the ALJ's decision became the final decision of the Commissioner. On November 21, 2016, Lemons initiated this action. (*See* doc. 1).

Lemons was a thirty-eight-year-old female as of her alleged disability onset date. (Tr. 32). Lemons graduated high school, completed two years of college, and has past relevant work history as a customer service representative, teacher's aide, cashier/stock clerk, and laborer. (Tr. 32, 44, 218, 277-232, 249-256).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

3

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Lemons met the insured status requirements of the Social Security Act through December 31, 2015 (her date last insured or "DLI"), and that Lemons had not engaged in substantial gainful activity since October 27, 2014, her alleged onset date. (Tr. 22). At Step Two, the ALJ found Lemons has the following severe impairments: fibromyalgia, history of asthma, anxiety, and depression. (*Id.*). At Step Three, the ALJ found Lemons did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23).

Before proceeding to Step Four, the ALJ determined Lemons' residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Lemons had the RFC to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, sit six out of eight hours, and stand six out

of eight hours. There are no limitations on the ability to push and/or pull, including operation of hand or foot controls up to the sit/stand limitations. She can occasionally climb ramps and stairs and occasionally crawl. She should not work on ladders, ropes, or scaffolds. She should avoid extreme cold/heat and humidity. She should avoid concentrated exposure to dust and gases. She should not work at unprotected heights. She can remember simple instructions and tasks. She can maintain attention for two-hour periods across an eight-hour workday five days a week with all customary breaks. She is limited to occasional contract with the public, coworkers, and supervisors. Any changes in the work environment should be gradually introduced. (Tr. 23-32).

At Step Four, the ALJ determined Lemons is unable to perform any past relevant work. (Tr. 32). At Step Five, the ALJ determined, based on Lemon's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Lemons could perform. (Tr. 33). Therefore, the ALJ determined Lemons has not been under a disability and denied her claim. (Tr. 34).

**V. Analysis**

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Lemons failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Lemons challenges

the Commissioner's decision, contending the ALJ failed to consider her severe impairment of fibromyalgia in accordance with Social Security Rulings ("SSR") 12-2p. (Doc. 13 at 10-16). Lemons also contends the ALJ erred when discounting the opinion of her treating physician and assessing her subjective complaints of pain. (*Id.* at 14-16).

### A. Social Security Rulings 12-2p

SSR 12–2p, which became effective on July 25, 2012, provides guidance for developing evidence to establish a claimant has a medically determinable impairment of fibromyalgia and for evaluating fibromyalgia in the context of a disability claim. *See* SSR 12–2p. This ruling clarifies that because fibromyalgia cannot meet a Listing (because it is not a listed impairment), at step three of the sequential evaluation, the ALJ must determine whether it medically equals a Listing, alone or in combination with other severe impairments. *See id.*

Lemons contends that, although the ALJ did a specific Step 3 analysis regarding her mental impairments under Listings 12.04 and 12.06, he did no specific Step 3 analysis regarding her fibromyalgia impairment, as required by SSR 12-2p, and therefore improperly reviewed her claim. (Tr. 23-24). Notably, "it is not required that the [ALJ] mechanically recite the evidence leading to [his] determination." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). *See also Johnson v. Barnhart*, 148 Fed. Appx. 838, 842 (11th Cir. 2005); *Keane v. Comm'r of Soc. Sec.*, 205 Fed. Appx. 748, 750 (11th Cir. 2006); *Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 Fed. Appx. 748, 750 (11th Cir. 2011); *Kalishek v. Comm'r of Soc. Sec.*, 470 Fed. Appx. 868, 870 (11th Cir. 2012). And, despite the specific guidance in SSR 12-2p, a determination that a claimant's impairments do not meet or equal a Listing may be implied from an ALJ's decision.[4] *Hutchison*,

---

[4] Lemons argues against any implicit finding at step three of the sequential evaluation on the grounds a court cannot review an implicit finding without more particular findings as to how

787 F.2d at 1463; *Johnson*, 148 Fed. Appx. at 842; *Keane*, 205 Fed. Appx. at 750; *Gray ex rel. Whymms*, 454 Fed. Appx. at 750; *Kalishek*, 470 Fed. Appx. at 870.

The ALJ did not explicitly cite SSR 12–2p or discuss Lemons' fibromyalgia at step three of the sequential evaluation. However, he did explicitly determine Lemons' fibromyalgia constituted a severe impairment, and that Lemons did not have an impairment or combination of impairments that met or medically equaled a Listing. (Tr. at 22-24). Implicit in the latter determination is that Lemons' fibromyalgia, alone or in combination with her other severe impairments, did not meet or equal a Listing, specifically Listing 14.09 (Inflammatory Arthritis). The question for this Court is whether there is substantial evidence to support this implicit determination.

### 1. Whether There is Substantial Evidence that Listing 14.09D (Inflammatory Arthritis) is Not Met.

The only Listing Lemons identifies as being equaled by her fibromyalgia, alone or in combination with her other severe impairments, is Listing 14.09D. (Doc. 13 at 13-14). That Listing provides for disability where there are:

> [r]epeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.

---

a claimant's impairment relates to the Listings. (Doc. 13 at 12). The substance of her argument tracks the reasoning of Judge Clark's dissent in Hutchison. *See* 787 F.2d at 1466–68. Lemons also relies on *Todd v. Heckler*, 736 F.2d 641 (11th Cir.1984) to support her argument the ALJ committed error. (Doc. 13 at 13). This case is distinguishable from the circumstances present here. In *Todd*, the Eleventh Circuit reversed a district court's order affirming denial of SSI benefits where the ALJ failed to consider Appendix 1 in making his disability determination. 736 F.2d at 642. Here, the ALJ did not fail to consider Appendix 1. He explicitly determined Lemons does not have an impairment or combination of impairments that meets or equals a Listing. (Tr. at 23-24).

> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P, App. 1, § 14.09D. Lemons claims she meets this Listing because she has severe fatigue and malaise, as well as marked limitations in completing tasks in a timely manner due to deficiencies in concentration, persistence, and pace, resulting from fibromyalgia and chronic pain. (Doc. 13 at 14).

As the Commissioner notes, Lemons' allegations of fatigue and malaise, without more, do not mandate a finding that those symptoms were repeated and severe, as required by the Listing. (*See* doc. 14 at 7). Treatment records reflect that Lemons appeared to be in no acute distress and generally provided positive reports about the effectiveness of her medication. (Tr. 379, 382, 385, 407, 413, 417, 420-21, 423, 425, 429, 432, 442, 450, 455, 459, 461, 466, 469, 473, 475-76, 478, 482, 509, 513). Additionally, the ALJ found only moderate, not marked, limitations with regard to concentration, persistence, and pace, based on Lemons' reported activities and the expert opinion provided by state agency consultant Dr. Robert Estock. (Tr. 23, 105, 243-45, 246). Lemon does not provide any specific argument to support a finding that the ALJ erred in finding these limitations to be moderate rather than marked. (Doc. 13 at 14-16). Instead, she takes issue with the ALJ not accepting the full extent of her subjective complaints, the ALJ's discounting of Dr. Fernandez's assessment, and the ALJ's failure to address her Raynaud's Syndrome diagnosis. (Doc. 13 at 14-17). For the reasons explained below, these arguments are unpersuasive, as there is substantial evidence to support the ALJ's implicit finding that Lemons' impairments do not meet Listing 14.09D.

### 2. Subjective Complaints, Dr. Fernandez's Assessment, and Raynaud's Syndrome

Lemons argues the ALJ would have found her disabled if he would have accepted the full extent of her subjective complaints, taken into account Dr. Fernandez's assessment, and addressed her Raynaud's Syndrome diagnosis. (Doc. 13 at 14-17). As to Lemon's subjective complaints of pain, the ALJ was not required to defer to Lemons' subjective reports in assessing her work-related limitations. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *Moore*, 405 F.3d at 1212. An ALJ may reject a claimant's testimony of disabling symptoms as not credible if he provides "explicit and adequate reasons" for doing so. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). In fact, as the reviewing Court, "[t]he question is not . . . whether the ALJ could have reasonably credited [claimant's pain] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938–939 (11th Cir. 2011). The ALJ met this standard.

Here, the ALJ considered all symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence. (Tr. 24-25). The ALJ followed the required two-step process, first determining whether there is an underlying medically determinable physical or mental impairment(s) (i.e., impairments that can be shown by medically acceptable clinical and laboratory diagnostic techniques) that could reasonably be expected to produce Lemons' pain or other symptoms. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce Lemons' pain or other symptoms was shown, the ALJ evaluated the intensity, persistence, and limited effects of her symptoms to determine the extent to which they limit her functioning. (Tr. 25-32). The ALJ

9

concluded that Lemons' medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 25-26).

Specifically, the ALJ recognized Lemons' fibromyalgia was treated conservatively with oral medication, without Lemons seeking alternative treatment modalities, including the physical therapy that was recommended. (Tr. 26). Lemons also reported oral medication to be beneficial. (*Id.*). The ALJ also found the objective medical record inconsistent with the impairment resulting in motor, sensory, reflex, range of motion, gait, or mobility deficits. (Tr. 27). He noted that examinations showed no synovitis, deformities, or laxity. (*Id.* citing 376-387). Although Lemons reported a significant decline in functioning, the ALJ noted the lack of muscle disuse atrophy and the presence of good muscle bulk and tone. (Tr. 27). UAB described Lemons' arthralgia (meaning "joint pain") as episodic and noted persistent joint swelling was absent. (Tr. 402). The ALJ further noted that when Lemons presented for care, she was not observed as being in the moderate or severe distress she alleges. (*Id.*). Accordingly, because the ALJ provided "explicit and adequate" support, the assessment (and discrediting) of Lemons' subjective complaints is proper and supported by substantial evidence. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Likewise, the ALJ was not required to adopt Dr. Cecilia Fernandez's assessment of Lemons' RFC. (*See* tr. 512-517). An ALJ must give good reasons for rejecting a treating source's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, opinions on issues such as a claimant's RFC are not medical opinions. *Id.* Instead, they are opinions on dispositive issues reserved for the Commissioner. *See id*. §§ 404.1527(d), 416.927(d); *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986). Although an ALJ cannot disregard such opinions, they are not entitled

to special weight or deference. *See id.*

As the ALJ noted, Dr. Fernandez's opinion is a "check and fill-in-the-blank type form." (*See* tr. 30). *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). The ALJ further noted that Dr. Fernandez's "check and fill-in-the-blank form" contrasts sharply with the other evidence of record, including Dr. Fernandez's own office notes which provide a longitudinal, contemporaneous, treatment record for Lemons. (Tr. 30). For example, the ALJ explained, the restriction to "rarely" reaching above and below shoulder level as well as with handling objects contrasts sharply with the routinely normal range of motion, normal strength, and no tenderness in all extremities. (Tr. 30). Dr. Fernandez even reports Lemons as being independent with no problems in dressing, bathing, shaving, hair care, and toileting, which involves reaching in various directions and overhead. (*Id.*). Additionally, Dr. Fernandez's opinion that Lemons' condition is not likely to change is inconsistent with her orders for physical therapy (although Lemons had not complied). (*Id.*). Finally, the ALJ also noted that Lemons asked Dr. Fernandez to complete the form one week or so before the hearing, and Dr. Fernandez had no access to review the medical evidence of record of other physicians or the claimants' reported daily activities. (*Id.*). The ALJ concluded that it appeared Dr. Fernandez relied heavily on Lemons' subjective reports. (*Id.*). Accordingly, substantial evidence supports the ALJ's decision to discount Dr. Fernandez's opinion.

Finally, Lemons also argues the ALJ erred by not discussing her diagnosis of Raynaud's Syndrome.[5] (Doc. 13 at 16). It is axiomatic that a finding of disability hinges not on diagnoses,

---

[5] Raynaud's Syndrome or Raynaud's disease causes areas of the body, such s finders and toes, to feel numb and cold in response to cold temperatures or stress. When a person has

but on the functional limitations attendant to them that prevent the individual from working. *See* 20 C.F.R. §§ 404.1520(d)-(f), 416.920(d)-(f); *see also Moore*, 405 F.3d at 1213 n.6 ("the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard"). Relevant here is that Lemons alleges Reynaud's Syndrome causes her to have no feelings in her hands. (Doc. 13 at 16). The ALJ considered the evidence of record and included in his RFC finding those limitations he found supported, which do not include an inability to use her hands. The ALJ expressly considered Lemons' allegations of extreme hand limitations, but found them inconsistent with her reports of no problems with dressing, bathing, hair care, shaving, feeding herself, or toileting, and activities including cooking and laundry (Tr. 29, 241-242). *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Macia*, 829 F.2d at 1012 (recognizing that a claimant's activities are probative of the validity of her alleged limitation). In support of her argument, Lemons fails to cite any medical evidence warranting a finding of manipulative limitations. (Doc. 13 at 16). Treatment notes reflect she denied numbness on numerous occasions (Tr. 416, 429, 463, 472, 478). There is no error related to the lack of discussion of Lemons' Raynaud's Syndrome.

As outlined above, substantial evidence and proper legal analysis supports the ALJ's decision that Lemons is not disabled.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying

---

Raynaud's syndrome, his or her smaller arteries that supply blood to the skin narrow, limiting blood circulation to affected areas. Mayo Clinic, Patient Care & Health Information > Diseases & Conditions > Raynaud's disease, *available at* https://www.mayoclinic.org/diseases-conditions/raynauds-disease/symptoms-causes/syc-20363571 (last visited March 19, 2018).

Lemons' claim for a period of disability, disability insurance benefits, and supplemental security income is **AFFIRMED**, and this action **DISMISSED WITH PREJUDICE.**

DONE this 20th day of March, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE